UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ROBERT PENDERGRASS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:15-CV-974 NAB |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Robert Pendergrass' application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423 *et seq.* Pendergrass alleged disability due to seizures. (Tr. 296.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 9.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcripts and the medical evidence. The Court heard oral argument in this matter on August 10, 2016. For the reasons set forth below, the Court will affirm the Commissioner's final decision.

**I.     Issues for Review**

Pendergrass presents two issues for review. First, he states that the administrative law judge's (ALJ) residual functional capacity (RFC) determination is not supported by substantial evidence. Pendergrass also states that the hypothetical question posed to the vocational expert did not capture the concrete consequences of his impairment. The Commissioner asserts that the

ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**II.     Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the

criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;

> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III. Discussion

Pendergrass asserts that his onset date of disability is January 31, 2009. His last date of eligibility for disability insurance benefits was December 31, 2009. Because Pendergrass' last date insured is December 31, 2009, Pendergrass has the burden to show that he had a disabling impairment before his insured status expired. *See Barnett v. Shalala*, 996 F.2d 1221 (8th Cir. 1993) (*citing Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984)). "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider [his] medical condition as of the date [he] was last insured." *Davidson v. Astrue,* 501 F.3d 987, 989 (8th Cir. 2007) "Evidence from outside the insured period can be used in helping to elucidate a medical condition during the time for which benefits may be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). But, the evidence from outside the period cannot serve as the only support for the disability claim. *Id.* The ALJ found that Pendergrass had the severe impairment of seizure disorder. (Tr. 15.)

#### A. Medical Records

The medical records relevant to this discussion are summarized as follows. On December 16, 2008, Pendergrass arrived at the emergency room and reported that he experienced a seizure for the first time in his life. (Tr. 392.) A physical examination showed a bruised and slightly swollen tongue and flushed face. (Tr. 393.) A posterioranterior and lateral chest x-ray showed hyperinflation consistent with obstructive pulmonary disease. (Tr. 396, 434-

37.) A CT scan of the brain without contrast showed bifrontal encephalomalcia[1], more pronounced on the left corresponding with old hemorrhagic contusions present in 1997 with no acute intraparenchymal abnormalities and minor ethmoid sinusitis. (Tr. 396, 438-39.) The treating physician diagnosed Pendergrass with new onset seizure and acute chronic alcohol abuse. (Tr. 394.) The treating physician also noted that Pendergrass' son stated that Pendergrass fell the previous Friday and it happens all the time when he is "drank." (Tr. 394.) The treating physician opined that the seizure was most probably from alcohol. (Tr. 394.)

Pendergrass visited his primary care physician Dr. Shawn Brunk the next day and his examination was normal. (Tr. 444-45.) Dr. Brunk diagnosed him with seizures and encephalitis[2] and encephalomyelitis[3]. (Tr. 445.) Dr. Brunk referred Pendergrass to a neurologist. (Tr. 445.) A brain MRI with and without contrast indicated encephalomalacia with underlying gliosis[4] involving both frontal lobes, scattered chronic small vessel ischemic white matter change, and mild bilateral anterior ethmoid sinus disease. (Tr. 430, 433.) A brain MRA[5] showed no significant abnormalities of the brain. (Tr. 431-32.)

A few days later, Pendergrass visited Dr. Duane Turpin, a neurologist. (Tr. 418-19.) Pendergrass told Dr. Turpin that he had a head injury in 1997 from a car accident. He also reported a "blackout" that resulted in a visit to the emergency room. (Tr. 418.) Pendergrass reported difficulty with compliance with blood pressure medication and that he normally drinks one or two drinks occasionally and between six to twelve beers on the weekends. (Tr. 418.) Dr.

---

[1] Encephalomalcia is "softening of the brain." Dorland's Illustrated Medical Dictionary 613 (37th ed. 2012).
[2] Encephalitis is "inflammation of the brain." Dorland's Illustrated Medical Dictionary 612 (37th ed. 2012)
[3] Encephalogmyelitis is "inflammation involving both the brain and spinal cord." Dorland's Illustrated Medical Dictionary 613 (37th ed. 2012)
[4] Gliosis is an overgrowth of the astrocytes in an area of damage in the brain or spinal cord. Stedman's Medical Dictionary 750 (27th ed. 2000).
[5] "Magnetic resonance angiography (MRA) is a noninvasive procedure for viewing possible blockages in arteries." KATHLEEN DESKA PAGANA & TIMOTHY J. PAGANA, MOSBY'S MANUAL OF DIAGNOSTIC AND LABORATORY TESTS 1107 (5th ed. 2014).

Turpin diagnosed Pendergrass with seizure disorder due to ten year cerebral contusion and prescribed Keppra XR. (Tr. 419.) Dr. Turpin instructed Pendergrass not to drive for six months and to follow up with Dr. Turpin in a few weeks to do blood work and assess medication use. An electroencephalogram[6] was abnormal due to left frontal sharp activity that indicated underlying area of cortical irritability that correlates with partial seizures with or without secondary generalization. (Tr. 420.)

Pendergrass next visited Dr. Turpin in February 2010. (Tr. 417.) During the visit, Dr. Turpin noted that Pendergrass never followed up from his December 2008 visit. (Tr. 417.) Pendergrass reported that he had had three seizures within the past year and he was currently working part time as a heavy equipment truck driver. (Tr. 417.) Dr. Turpin reported that Pendergrass had been advised to seek disability and he agreed with that suggestion. (Tr. 417.) Dr. Turpin increased Pendergrass' dosage of Keppra. (Tr. 417.) During a May 18, 2010 visit with Dr. Turpin, Pendergrass reported that he had not experienced a seizure since the increase in his medication. (Tr. 416.) In late November 2010, Pendergrass reported to Dr. Turpin that he had a seizure 3 weeks before the visit. (Tr. 489.) Dr. Turpin instructed Pendergrass to refrain from driving and drinking. (Tr. 489.) Pendergrass visited Dr. Turpin in May 2011 and reported that he had a small seizure two weeks before the visit. (Tr. 488.) Dr. Turpin requested an EEG, which was normal. (Tr. 490.)

On November 23, 2010, Dr. Turpin completed a RFC Questionnaire regarding Pendergrass. (Tr. 482-86.) Dr. Turpin indicated that he had seen Pendergrass for two years every six months and diagnosed him with seizure disorder and past history of head injury. (Tr. 482.) Dr. Turpin opined that the seizures were generalized with a loss of consciousness and

---

[6] An electroencephalogram (EEG) is the system for recording the electric potentials of the brain derived from electrodes attached to the scalp. Stedman's Medical Dictionary 575 (27th ed. 2000).

occurred four times per year. (Tr. 482.) Dr. Turpin indicated that after seizures Pendergrass experienced confusion and irritability that lasted one day. (Tr. 483.) He wrote that the seizures were a "significant disability." (Tr. 483.) Dr. Turpin opined that Pendergrass was incapable of even low stress jobs and he had associated mental problems of memory problems, short attention span, and irritability. (Tr. 485.) He opined that Pendergrass would likely be absent from work about one day a month or less. (Tr. 485.) Dr. Turpin did not respond to the questions on the questionnaire that requested "the earliest date that the description and symptoms and limitations in the questionnaire applies" or whether Pendergrass "suffers from ethanol related seizures or ethanol/other drug abuse." (Tr. 484.)

In 2009, Pendergrass visited Dr. Brunk twice for a cold and sore throat. (Tr. 446-47.) In November 2009, Pendergrass reported to Dr. Brunk that he had "blackouts," most recently the Friday before and woke up with blood in his mouth. (Tr. 448.) Pendergrass told Dr. Brunk that he had not been taking his medication for three months. (Tr. 448.) Between January and July 2010, Pendergrass visited Dr. Brunk several times for injections due to bursitis of his elbow. (Tr. 450-59, 497-98, 501-502, 505-506.) During his February 2010 visit with Dr. Brunk, Pendergrass reported that he had had another seizure and did not follow-up with the neurologist, because he had to get back to work. (Tr. 499.) Dr. Brunk advised him to cease using alcohol and see the neurologist. (Tr. 500.) Dr. Brunk also advised him not to drive due to seizure activity. (Tr. 500.) Pendergrass had several visits with Dr. Brunk from 2011 through 2013 for osteoarthritis in the knee. (Tr. 507-508, 514-15, 520-31.)

In 2013, Pendergrass visited Dr. Glenn Sherrod, a neurologist. (Tr. 517-19.) At a February 2013 visit, Pendergrass reported that he had not had a seizure since December 2012 and he was doing well. (Tr. 519.) During a May 2013 visit, Pendergrass complained of knee,

7

shoulder, and back pain, and arthritis. (Tr. 518.) Pendergrass reported that his last grand mal seizure was December 2012, but he had had smaller ones. (Tr. 518.) An EEG taken on June 6, 2013 was normal. (Tr. 517.)

### B. RFC Determination

First, the Court will address whether the RFC is supported by substantial evidence in the record. The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[7] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ found that Pendergrass had the RFC to perform medium work through December 31, 2009, with the following limitations: (1) occasionally climb stairs and ramps; (2) never climb ladders and scaffolds; (3) frequently balance, stoop, kneel, crouch, and crawl; (4) avoid concentrated exposure to hazards such as unprotected heights and moving mechanical parts; and (5) avoid exposure to dusts, odors, fumes, and other pulmonary irritants. (Tr. 16.)

It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. RFC is a medical question. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907. In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R.

---

[7] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

§ 404.1527(b); *see also Heino*, 578 F.3d at 879. "A disability claimant has the burden to establish her RFC." *Eichelberger*, 390 F.3d at 591 (citing *Masterson*, 363 F.3d at 737).

Pendergrass contends that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ improperly evaluated Dr. Turpin's medical opinion and improperly considered his credibility, and failed to find that his knee and back problems were significant impairments.

### 1. Knee and back problems as significant impairments

First, Pendergrass contends that the ALJ should have found that his "significant" knee and back problems were medically determinable impairments. After the ALJ has determined that a claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. § 404.1508. To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R § 404.1520(c). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not 'severe.'" *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754 (8th Cir. 2001). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d at 1043). "It is the claimant's burden to establish that his impairment or combination of

impairments are severe. *Kirby*, 500 F.3d at 707 (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708.

In this case, the ALJ stated he did not find Pendergrass' testimony regarding leg and back problems credible because there is no evidence that Pendergrass was treated for back or leg problems in 2009 or that he had a medically determined severe back or leg impairment from January 2009 through December 2009. (Tr. 17.) Pendergrass states that there was evidence in the record that he had a right knee injection in 2007 and a finding of osteoarthritis in the right knee. In September 2010, a consultative examination and radiographs indicated osteoarthritis in Pendegrass' left knee and spondylolisthesis at L5 and S1 of the lumbar spine. (Tr. 465-473.)

Based on the Court's careful review of the evidence, the ALJ did not err in finding that Pendergrass' knee and back problems were severe impairments during the relevant time period. The Court agrees with the ALJ that Pendergrass has failed to meet his burden to show that these were severe impairments during the relevant time period. The record indicates that on December 21, 2007, Pendergrass visited Dr. Leonard Lucas to receive an ejection in his right knee. (Tr. 440.) Dr. Lucas also noted that Pendergrass was doing better and had changed some of his activities. (Tr. 440.) There is no evidence of any treatment during the relevant time period. Pendergrass may have had osteoarthritis during the relevant time period, but he has no evidence to indicate it was a severe impairment during that time. The mere existence of a medically determinable impairment does not mean that it is severe or that it supports a finding of disability. *Stormo v. Barnhart*, 377 F.3d 801, 808 (8th Cir. 2004). Evidence outside of the time period also did not provide support that these were severe impairments during the relevant time period.

### 2. Dr. Turpin's Medical Opinion

Next, the Court will address whether the ALJ properly evaluated Dr. Turpin's medical opinion. All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c); SSR 96-2p; *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

In this case, the ALJ discounted Dr. Turpin's opinion that Pendergrass could not do any work, but agreed that Pendergrass could not return to his past relevant work driving heavy machinery. (Tr. 17-18.) The ALJ also noted that ultimate determination of disability is reserved for the Commissioner. (Tr. 18.) Upon a review of Dr. Turpin's medical opinion evidence and

the record as a whole, the Court finds that the ALJ did not err in discounting Dr. Turpin's opinion. Dr. Turpin's opinion was completed in November 2010 and fails to indicate whether it covered the relevant time period. (Tr. 486.) Assuming that his opinion covered the relevant time period, the RFC determination is consistent with Dr. Turpin's opinion by limiting Pendergrass to no concentrated exposure to hazards such as unprotected heights and moving mechanical parts. Dr. Turpin also stated that Pendergrass was compliant with medication. (Tr. 484.) Treatment records indicate that Pendergrass told Dr. Brunk in November 2009 that he hadn't taken his medication for three months and he told Dr. Turpin in February 2010 that he had not taken his medication for a couple of months. (Tr. 417, 448-49, 495-96.) Pendergrass received no treatment for his seizures in 2009 until his November 2009 visit with Dr. Brunk. (Tr. 448-49, 495-96.) The treatment records and Dr. Turpin's opinion may indicate that Pendergrass could not return to his past relevant work, but in light of Pendergrass' activities of daily living, including continuing to drive during the relevant time period (Tr. 96-97), these findings do not support additional limitations in the RFC determination or a finding of disability.

### 3. Credibility

Finally, Pendergrass states that the ALJ improperly assessed his credibility. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

> (4) The dosage, effectiveness, and side effects of any medication; and
>
> (5) The claimant's functional restrictions.

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

A claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186 at *7 (July 2, 1996). The ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.* "The adjudicator may need to recontact the individual or question the individual at the administrative hearing in order to determine

whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." *Id.*

In this case the ALJ found that Pendergrass' credibility was lessened, because of vague testimony regarding the frequency of his seizures, failure to take medication and follow treatment directives, lack of treatment during the relevant time period, and activities of daily living that were inconsistent with a totally disabling seizure disorder. (Tr. 16-18.)

The ALJ considered several factors in evaluating Pendergrass' credibility. All of the factors considered by the ALJ can be considered when assessing credibility in a social security disability case. *See Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (appropriate for ALJ to consider conservative or minimal treatment in assessing credibility); *Juszczyk v.* Astrue, 542 F.3d 626, 632 (8th Cir. 2008) (If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, deference is given to the ALJ's credibility determination); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Circuit 2005) (significant daily activities may be inconsistent with claims of disabling pain). A review of the entire record demonstrates that ALJ did not rely solely upon any one of the factors in the credibility analysis. Considering the combination of the factors relied upon by the ALJ, substantial evidence in the record supports the ALJ's credibility findings. Based on the foregoing, the Court finds that the ALJ's credibility determination was supported by substantial evidence in the record as a whole.

### C. Vocational Expert Testimony

Finally, Pendergrass states that the hypothetical question to the vocational expert did not capture the concrete consequences of his impairment and therefore, cannot constitute substantial evidence on which the ALJ can rely in support of the disability determination. "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). A "hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies." *Pickney*, 96 F.3d at 297. "[T]he ALJ's hypothetical question must include the impairments that the ALJ finds are substantially supported by the record as a whole." *Id.* at 296. "However, the hypothetical need only include those impairments which the ALJ accepts as true." *Grissom v. Barnhart*, 416 F.3d 834, 836 (8th Cir. 2005).

As previously stated, the Court found that the ALJ's RFC determination was supported by substantial evidence in the record as a whole. The hypothetical question included all of Pendergrass' limitations the ALJ found to be credible. Therefore, the hypothetical question to the vocational expert was proper and the vocational expert testimony constituted substantial evidence supporting the Commissioner's denial of benefits. *See LaCroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006).

### IV. Conclusion

A review of the record as a whole demonstrates that Pendergrass had some restrictions in his functioning and ability to perform work related activities during the relevant time period, however, he did not carry his burden to prove a more restrictive RFC determination. *See*

*Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 17.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 10th day of August, 2016.

        /s/ Nannette A. Baker
        NANNETTE A. BAKER
        UNITED STATES MAGISTRATE JUDGE